[Cite as *In re A.B.*, 2014-Ohio-948.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

IN THE MATTER OF: A.B.            :

                               :         C.A. CASE NO.    2013 CA 23

                               :         T.C. NO.    20930451

                               :         (Civil appeal from Common
                                         Pleas Court, Juvenile Division)

                               :

                               :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     14th     day of      March     , 2014.

. . . . . . . . . .

TODD D. SEVERT, Atty. Reg. No. 0060076, 18 East Water Street, Troy, Ohio 45373
      Attorney for Appellant S.C.

THOMAS R. SCHIFF, Atty. Reg. No. 0039881, 500 Lincoln Park Blvd., Suite 216,
Kettering, Ohio 45429
      Attorney for Appellee R.B.

. . . . . . . . . .

FROELICH, J.

{¶ 1} S.C. ("Mother") appeals from a judgment of the Common Pleas Court

of Miami County, Juvenile Division, which continued her daughter's bi-weekly visitation with the child's father, R.B., as well as their transportation arrangement, and settled the amount of summer visitation.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3} The parties' daughter was born on July 23, 2009. The parties had married a few months earlier but were separated by the time of the child's birth, with Mother moving to West Milton in Miami County and Father continuing to live in Zanesville, Ohio. The parties reached an agreement which named Mother as the residential parent and legal custodian of the child and awarded Father parenting time with the child one day each week; the court adopted this agreement. Father was also ordered to pay child support. Later, Father's visitation with the child was expanded, on alternating weekends, from Thursday evening until Sunday evening.

{¶ 4} Further proceedings related to visitation with the child ensued. In 2011, the parties entered an agreement to deviate from the Standard Parenting Time Schedule with respect to summer visitation. However, the order filed by the trial court deviated from the Standard Parenting Time Schedule in additional ways that had not been agreed upon by the parties. For example, it did not provide for visitation on holidays or other significant occasions. It also ordered Father to provide all transportation to visits beginning in January 2013.

{¶ 5} Father appealed from the trial court's judgment. On appeal, we held that the court had abused its discretion "when it failed to either order the elements of the Standard Parenting Time Schedule * * * or, alternatively, to enter findings of fact and

conclusions of law for denying them." *In re A.J.B.*, 2d Dist. Miami No. 11CA006, 2011-Ohio-6176,[1] ¶ 40. We reversed the trial court's judgment and remanded for further proceedings. *Id.*

**{¶ 6}** After our remand, many months passed without any action. In December 2012, in response to motions by Father, the court scheduled a hearing. Prior to the hearing, Father also filed motions to modify the transportation order and to modify child support. A hearing was held in May 2013.

**{¶ 7}** Following the hearing, the trial court filed a judgment entry which provided that Father would continue, pursuant to the existing arrangement, to have visitation with the child on alternating weekends from Thursday evening until Sunday evening, until she begins kindergarten, at which time visitation will be from Friday evening to Sunday evening on alternating weekends, and that the parties will continue to meet in Hilliard (a midpoint) to facilitate the visits. With respect to summer visitation, the trial court provided that Father would have five weeks of visitation (in 2013), and four weeks of summer visitation in 2014, with no more than two weeks being consecutive, except by agreement of the parties; Father was ordered to provide all of the transportation for the summer visitation. The court indicated that the parties had reached an agreement with respect to holiday time, which would be filed by separate entry, and that Father had withdrawn his motion for modification of child support.

**{¶ 8}** Mother appeals from the trial court judgment, raising three assignments of error, which are related. We will address them together.

---

[1] Although the captions are slightly different, they involve the same parties.

{¶ 9}    The assignments of error state:

THE TRIAL COURT ERRED IN GRANTING THE FATHER EXPANDED PARENTING TIME CONSISTENT WITH THE COURT'S STANDARD ORDER WHEN THE FATHER RESIDES NEARLY THREE HOURS AWAY.

THE TRIAL COURT ERRED IN REQUIRING AN EXCHANGE POINT OTHER THAN THE RESIDENTIAL PARENT'S HOME.

THE TRIAL COURT ERRED IN FAILING TO LIST AND REVIEW ALL THE FACTORS CONTAINED IN [R.C.] 3109.051D IN FINDING PARENTING TIME WAS IN THE CHILD'S BEST INTEREST.

{¶ 10}    Mother contends that the court abused its discretion in awarding Father weekend parenting time that is more similar to the standard order of visitation than to the out-of-state visitation schedule, in light of the distance between the parents' homes, which is approximately 140 miles.  The standard out-of-state visitation schedule primarily provides for visitation in the summer, at spring break, and at "Christmas time," whereas the standard order provides for alternating weekends and one evening during the week; Father was awarded continuing visitation from Thursday through Sunday evenings, every other weekend.  Mother claims that the schedule adopted by the court is not in the child's best interest, because it will cause the child to miss every other Friday of her five-day per week preschool, and that the inclusion of Thursday evening in the weekend visits was "of no significant benefit" because Father works on Fridays.  Finally, Mother contends that the exchange of the child at a mid-point (in Hilliard) upsets the child, because she sometimes

falls asleep on the drive and awakens in an unfamiliar place, rather than in Mother's home.

{¶ 11}   At the hearing, Father asked the court to continue Thursday through Sunday weekend visits on alternating weekends, to order that the parties continue sharing the responsibility for transportation, and to award six weeks of summer visitation per year.   He testified that, although the child is sometimes upset at the exchange due to having fallen asleep in the car, this is not a frequent occurrence.   Father admitted that he works on many of the Fridays that his daughter spends with him.   However, he testified that he has a lot of vacation time and uses some of this time to take Fridays off; otherwise, the child is cared for by her grandparents until Father gets home from work.   He also testified that the time he spends with her on Thursday evenings is meaningful to him.

{¶ 12}   Mother testified that she planned to send her daughter to a Montessori preschool to help prepare her for kindergarten. Classes meet for half a day, five days per week. Mother wanted visitation to be from Friday to Sunday every other weekend to accommodate the preschool program.   She also testified that the exchanges between the parents at a midpoint, rather than at her home, were hard on the child because she would sometimes be sleeping in the car and because they would occasionally have to wait at the midpoint if Father arrived late due to traffic.   Additionally, Mother testified that the transportation has become more difficult for her because she has a new baby.   (Both parties acknowledged that Father provided all of the transportation of the child around the time of the new baby's birth by driving to Mother's home.)   Like Father, Mother works on Fridays and therefore would not typically spend time with her daughter that day.   Mother testified that she did not think Father should get to pick the best elements of the standard and

out-of-state visitation orders, having every other weekend with the child, akin to the standard order, and having extended summer visitation (six weeks for an out-of-state parent versus four weeks under the standard order). She asked that Father be required to provide all transportation, but she acknowledged that she would not think it was fair if the trial court were to require her to provide all transportation for visits.

{¶ 13}    The trial court's judgment addressed the parties' concerns as follows:

Mother's concern regarding the child's falling asleep and being apprehensive at exchange seems close minded. She could solve the issue by driving the entire distance or working out an alternating complete trip schedule. The child would still be in a car (something that is unchangeable) but always with a parent, * * *.

The standard order is a guideline; it is not always the answer to the "best interest" of the child; being with loving parents is!

The court believes that pre-school is important for child development but also recognizes that parental contact and involvement is important.

The father had very little time remaining to enjoy his daughter until mandatory school starts for her.

{¶ 14}    We review a trial court's decisions with respect to parenting time and the distribution of the burden, in cost and time, of transporting a child for visits under an abuse of discretion standard. *Martin v. Martin*, 179 Ohio App.3d 805, 2008-Ohio-6336, 903 N.E.2d 1243, ¶ 31 (2d Dist.); *Moshos v. Moshos*, 2d Dist. Greene No. 03CA83, 2004-Ohio-4932, ¶ 10. An abuse of discretion implies that the court's attitude is

unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 15} The trial court did not abuse its discretion in continuing the visitation schedule from Thursday through Sunday, on alternating weeks, notwithstanding Mother's desire to send the child to preschool. This schedule had apparently worked well in the past, and the trial court properly weighed the loss of some days of preschool against the importance of the child's relationship with her father and the time needed to build that bond. The court reasonably concluded that the child's relationship with her father should take priority.

{¶ 16} With respect to transportation, Mother's testimony emphasized instances in which, for reasons related to disrupted sleep or other circumstances, the child was crying or upset during the exchange; Mother also emphasized that, when Father picked the child up at her home around the time her (Mother's) new baby was born, the transition went very smoothly. Father downplayed the alleged disruptions at the Hilliard exchanges, claiming that the child was fine most of the time during the exchange.

{¶ 17} The trial court reasonably concluded that the benefit to the child of a close and consistent relationship with her father outweighed the burden on both parties of transportation to bi-weekly visitation. The court also reasonably concluded that the benefits to the child, if any, of making all of the exchanges at Mother's home would be unreasonably and unduly burdensome to Father. The court did not abuse its discretion in ordering that the exchanges would continue to take place in Hilliard.

{¶ 18} Mother's arguments on appeal do not challenge the portion of the trial

court's judgment related to summer visitation.

{¶ 19}    Mother also contends, very summarily, that if the court had applied the factors set forth in R.C. 3109.051(D) to its award of parenting time, it would have reached a different conclusion.   The statutory factors include: the child's relationships with his or her parents, siblings, and other family members, the geographical locations of the parents' residences, the parents' and child's available time, the age of the child, the child's adjustment to home, school, and community, and other factors relevant to the best interest of the child.

{¶ 20}    Mother's contention that the court's decision evinces error in not applying these factors is without merit.   Although the trial court did not discuss the factors specifically, the evidence related to these factors did not compel the conclusion that less visitation was in the best interest of the child.   Whether another trial court or this court would have reached a different conclusion is not relevant; based on the record before us, we do not find an abuse of discretion.

{¶ 21}    The assignments of error are overruled.

{¶ 22}    The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and WRIGHT, J., concur.

(Hon. Thomas R. Wright, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Todd D. Severt
Thomas R. Schiff
Hon.   W. McGregor Dixon, Jr.